UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GERALDINE DAR DAR,

    Plaintiff,

v.                                                                                    Case No. 8:04-cv-1055-T-24 TBM

ASSOCIATED OUTDOOR CLUB, INC.,

    Defendant.
_____/

**ORDER**

    This cause comes before the Court on two motions: (1) Defendant's Motion for Summary Judgment (Doc. No. 63) and (2) Plaintiff's motion to disregard Defendant's affidavits filed in support of its motion for summary judgment (Doc. No. 66). Both motion are opposed. (Doc. No. 75, 76).

**I. Motion to Disregard Affidavits**

    Plaintiff moves for the Court to disregard the affidavits filed by Defendant in support of its motion for summary judgment. Plaintiff contends that the affidavits should be disregarded, because they contradict deposition testimony. However, most of the inconsistencies pointed out by Plaintiff are between one person's affidavit and a different person's deposition testimony. While such inconsistencies may show that there is a genuine issue of material fact, they do not show that the person's affidavit should be disregarded.

    The only clear inconsistency between a person's affidavit and their own deposition testimony is Joe Capitano's statement in his affidavit that he only bumped into Plaintiff once. (Doc. No. 63, Capitano affidavit, ¶ 7). However, in his deposition, Capitano stated that he

bumped into Plaintiff a couple of times. (Doc. No. 67, Capitano depo, p. 5-6). As such, the Court will not consider this portion of his affidavit that conflicts with his deposition testimony.[1] Accordingly, the Court denies Plaintiff's motion to disregard the affidavits, except with regard to Capitano's statement that he only bumped into Plaintiff once.

## II.  Motion for Summary Judgment

Defendant moves for summary judgment on Plaintiff's sexually hostile work environment and retaliation claims. For the reasons stated below, the motion is granted in part and denied in part.

### A.  Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. See Celotex Corp. v. Catrett, 477 U.S. 317 (1986). A moving party discharges its burden on a motion for summary judgment by "showing" or "pointing out" to the Court that there is an absence of evidence to support the non-moving party's case. Id. at 325.

When a moving party has discharged its burden, the non-moving party must then "go

---

[1] However, since Capitano's affidavit and deposition testimony conflicts with Plaintiff's deposition testimony that Capitano touched her butt approximately twice a week, and since the Court must view the evidence in the light most favorable to Plaintiff when evaluating Defendant's motion for summary judgment, this issue is moot, because the Court will base its decision on Plaintiff's version of the facts since they conflict with Capitano's version of the facts on this issue.

beyond the pleadings," and by its own affidavits, or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing there is a genuine issue for trial. Id. at 324. In determining whether the moving party has met its burden of establishing that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, the Court must draw inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. See Samples on behalf of Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988).

**B.  Background**

Plaintiff was hired by Defendant, Associated Outdoor Club, Inc. doing business as Tampa Greyhound Track, in July of 1999. In January of 2000, Plaintiff became a pari-mutual clerk, and she was responsible for punching tickets and assisting customers. Plaintiff contends that Defendant subjected her to a sexually hostile work environment and retaliated against her for complaining about the harassment.[2] While employed by Defendant, Plaintiff identifies numerous incidents that she characterizes as discriminatory.

Plaintiff alleges that in 2000, David Grant would walk by and poke her in the side with his finger. (Pla. depo[3], p. 30). Grant poked Plaintiff five to ten times during a six month period. (Pla. depo. p. 78-79). Plaintiff complained to two supervisors, Richard Monjovi and Ed Gilley, about Grant poking her. (Pla. depo, p. 30-31). After Plaintiff complained to Ed Gilley, Grant stopped poking her. (Pla. depo, p. 76).

---

[2]Defendant did not have a written sexual harassment policy in place during Plaintiff's employment. (Doc. No. 63, Hater affidavit, ¶ 6).

[3]Plaintiff's deposition transcript is filed as an exhibit to Doc. No. 63.

Additionally, Plaintiff alleges that during the simulcast season[4] of 2001, several co-workers would pass by her and touch her butt. (Pla. depo, p. 32). Initially, Plaintiff thought that they touched her butt because she was in their way. (Pla. depo, p. 30). However, since co-workers kept touching her butt, yet a significantly larger person (Howard Chesser) was able to pass by her without touching her butt, Plaintiff believes that people were touching her butt on purpose. (Pla. depo, p. 32). Plaintiff asked Chesser how he could pass behind her without touching her butt, and he put his head down and laughed, confirming Plaintiff's suspicion that people were touching her butt on purpose. (Pla. depo, p. 32). Plaintiff identified two co-workers by name that touched her butt, Jeannie Rekker and Joe Capitano.

Plaintiff alleges that Rekker touched her butt twice one day in 2002. (Pla. depo, p. 65-67). Plaintiff reported the incident to a supervisor, Pete Berkobein. (Pla. depo, p. 67-68). Additionally, Plaintiff alleges that Capitano began touching her butt while she was working at her station. (Pla. depo, p. 35, 90, 93, 100). Plaintiff told Capitano not to touch her, and she complained about this to a supervisor, Howard Chesser. (Pla. depo, p. 40-41). However, Capitano continued to touch her butt, and Plaintiff estimates that he touched her butt twice a week. (Pla. depo, p. 54, 93). Plaintiff repeatedly reported to management (including Ed Gilley, Vic Malozi, and Howard Chesser) that Capitano kept touching her butt. (Pla. depo, p. 94). During the live season[5] of 2002, Plaintiff put a chair behind her while she was working at her station, and this stopped Capitano from touching her butt. (Pla. depo, p. 96-97).

Plaintiff also alleges that Patty Bruner, Plaintiff's co-worker, brought a magazine to work

---

[4]The simulcast season runs from January to June each year.

[5]The live season runs from July to December each year.

4

in November of 2002. (Pla. dep., p. 54, 57). Plaintiff did not look at the magazine, but she believes that the magazine sold ladies' underwear with built-in padding to enhance one's butt because she overheard her co-workers talking about it. (Pla. depo, p. 57, 58, 64). Plaintiff never told management about the magazine or that she was offended by it. (Pla. depo, p. 60).

Plaintiff also alleges that during the live season of 2000, her co-workers[6] would invite her out to go drinking after work. (Pla. depo, p. 81). Plaintiff was not singled out; other people were invited also. (Pla. depo, p. 82-83).

Plaintiff also alleges that Tony Guzman, Plaintiff's co-worker who sat next to her, sexually harassed her in January of 2002 by telling her that he saw a man in the men's restroom unzip his pants and "a whale of a dick fell in the water." (Pla. depo, p. 106). Plaintiff thought that Guzman told her the story because she is a woman, so she asked him to tell the story to a male co-worker, Marlow Spivey. (Pla. depo, p. 108). Guzman repeated the story to Spivey. (Pla. depo, p. 108). Plaintiff reported the incident to Ed Gilley. (Pla. depo, p. 109).

Additionally, Plaintiff alleges that Guzman harassed her after Guzman's girlfriend, Charlyn Brodie, brought him a cup of soup and he said to Plaintiff, "wouldn't you like to have a woman do the things for you that Charlyn does for me?" (Pla. depo, p. 111). Plaintiff reported this incident to her supervisors. (Pla. depo, p. 111). Thereafter, Plaintiff alleges that Guzman brushed against her shoulder when he walked past her, and then Plaintiff and Guzman started screaming at each other in front of customers. (Pla. depo, p. 116, 124). A police officer came up and asked what was going on. (Pla. depo, p. 124). Plaintiff and the police officer went into a

---

[6]It is unclear as to who exactly invited her out. Plaintiff merely refers to these co-workers as "they" in her deposition.

supervisor's office, and Plaintiff explained what had happened. (Pla. depo, p. 125). Howard Chesser was in the office while Plaintiff spoke with the police officer. (Pla. depo, p. 126). A few days later, Guzman was moved away from Plaintiff's station and his girlfriend, Charlyn Brodie (Plaintiff's co-worker), was moved into Guzman's place. (Pla. depo, p. 128, 130).

Plaintiff alleges that about two weeks after Brodie moved next to her, Brodie came back from lunch and punched Plaintiff's left shoulder when she (Brodie) took her jacket off. (Pla. depo, p. 132-33). Plaintiff contends that her shoulder was bruised for two weeks. (Pla. depo, p. 133). Plaintiff reported the incident to Ed Gilley, and he determined that the incident was an accident. (Pla. depo, p. 133-34).

Plaintiff also alleges that during simulcast 2002, Brodie would park her car headlight to headlight with Plaintiff's car. (Pla. depo, p. 140, 143). Plaintiff believes that Brodie did this in an effort to intimidate Plaintiff for complaining about Brodie's boyfriend, Guzman. (Pla. depo, p. 143). Additionally, Plaintiff felt intimidated by Brodie and Guzman being on the street where Plaintiff lives.[7] (Pla. depo, p. 149).

Plaintiff also alleges that during simulcast 2002, someone kept letting the air out of different tires of her car. (Pla. depo, p. 140, 151). However, Plaintiff does not know who was doing it. (Pla. depo, p. 141).

Additionally, Plaintiff alleges that on November 9, 2002, she punched a ticket for a co-worker named Bobby Diaz. (Pla. depo, p. 171). When Diaz walked away, Guzman and Evie

---

[7]Plaintiff lives "around the corner" from the track. (Pla. depo, p. 194).

Perez stopped Diaz and spoke to him in Spanish.[8]  (Pla. depo, p. 171).  Thereafter, Diaz came back over to Plaintiff and asked her if she wore "panties with the butt built into them."  (Pla. depo, p. 172).  Plaintiff saw Guzman and Perez giggling while this was occurring.  (Pla. depo, p. 172).  Plaintiff got angry with Diaz and told him that it was none of his business.  (Pla. depo, p. 172-73).  As the incident with Diaz occurred, Howard Chesser showed up.  (Pla. depo, p. 173). Later that same day, Plaintiff spoke with Larry Hall, a supervisor, about all of the incidents of alleged harassment.  (Pla. depo, p. 196-98).  This was Plaintiff's last complaint of sexual harassment.  (Pla. depo, p. 247).

Plaintiff contends that her supervisors and co-workers retaliated against her.  Plaintiff contends that Brodie retaliated against her when Brodie punched Plaintiff in the shoulder after Plaintiff complained about Brodie's boyfriend, Guzman.  (Pla. depo, p. 227).

Additionally, Plaintiff contends that Howard Chesser retaliated against her for complaining about the alleged sexual harassment by logging three customer complaints against her.  Chesser logged a complaint against Plaintiff by an unknown customer on February 10, 2003.[9]  (Pla. depo, p. 212-13).  The entry on February 10, 2003 states: "[Plaintiff] reprimanded for being rude to patron.  She was warned for last time.  One more complaint[,] out of here." (Doc. No. 63, Ex. 3).

Chesser logged another complaint against Plaintiff on May 19, 2003.  (Pla. depo, p. 215).  The entry on May 19, 2003 states: "[Plaintiff] terminated; refusing to wait on customer."  (Doc.

---

[8]Plaintiff does not speak Spanish and does not know what Guzman and Perez said to Diaz.  (Pla. depo, p. 172).

[9]In her deposition, Plaintiff states that the complaint was logged on February 8, 2003, but the log book indicates that it was logged on Monday, February 10, 2003.  (Doc. No. 63, Ex. 3).

No. 63, Ex. 3). It appears that the incident referred to in the May 19, 2003 entry was an incident that occurred on May 16, 2003. On May 16, 2003, a customer, Larry Jackson, came to Plaintiff's station to make a bet; however, Plaintiff was leaving for her lunch hour at that time. (Pla. depo, p. 220). Plaintiff told Jackson to go to the tellers inside since she was leaving for her lunch hour, and Jackson called her a "lazy mother fucker." (Pla. depo, p. 220).

Chesser logged another customer complaint against Plaintiff on May 24, 2003. (Pla. depo, p. 222). The May 24, 2003 entry states: "Customer [Josh Mannis] informs me that [Plaintiff] was a very rude individual an[d] very unpleasant." (Doc. No. 63, Ex. 3). Chesser contends that when Mannis found out that Plaintiff was terminated, he gave the complaint about her being rude. (Doc. No. 67, Chesser depo, p. 21).

Plaintiff also contends that Chesser, Ed Gilley, and Larry Hall retaliated against her for complaining about the alleged sexual harassment by terminating her rather than handling her sexual harassment complaints. (Pla. depo, p. 224-25). Plaintiff was terminated on May 19, 2003. (Pla. depo, p. 225). In Plaintiff's Personnel Action Form, Larry Hall states that Plaintiff was terminated because she was rude to customers and other employees and that she had been warned repeatedly during the past year. (Doc. No. 63, Ex. 4). Defendant has rules regarding employee behavior, which include the following:

> COURTESY–be courteous to all our customers regardless of the situation. This is absolutely mandatory. Employees will, at all times, act in a friendly and professional manner. Should any questions or misunderstandings arise over a situation you cannot resolve, do not create an argument or cause a disturbance. Call your supervisor or send for a Security Officer, but do not physically touch, hold or detain the customer.

(Doc. No. 63. Ex. 5). Additionally, Defendant's rules provide that employees may not refuse to wait on any customer that comes to their window and that if they do, they will be terminated.

(Doc. No. 63, Ex. 6).

Plaintiff concedes that she has been reprimanded at work for arguing or yelling at co-workers. (Pla. depo, p. 230). Plaintiff also concedes that she was told that if she had one more outburst, she would be terminated.[10] (Pla. depo, p. 246). However, Plaintiff contends that these outbursts/arguments only occurred whenever people touched her. (Pla. depo, p. 230-31, 72-74).

### C. Analysis

Plaintiff alleges that Defendant subjected her to a sexually hostile work environment and retaliated against her for complaining about the harassment in violation of Title VII and the Florida Civil Rights Act. Defendant argues that it is entitled to summary judgment on Plaintiff's hostile work environment and retaliation claims. Accordingly, the Court will address each claim.[11]

#### 1. Sexually Hostile Work Environment

Plaintiff alleges that Defendant subjected her to a sexually hostile work environment due to the following incidents: (1) Grant poking her in her side, (2) people touching her butt, (3) Bruner bringing a magazine to work that sold ladies' underwear with built-in padding, (4) co-workers inviting her to go out drinking after work, (5) Guzman telling her the story about a man's genitalia that he saw in the restroom, (6) Guzman asking her if she wanted a woman to do things for her like Brodie did for him (after Brodie brought Guzman a cup of soup), (7) Guzman brushing her shoulder as he walked past her, and (8) Diaz asking her if she wore underwear with

---

[10] It is unclear as to when she was told this.

[11] "Florida's Civil Rights Act is patterned after Title VII, and thus federal case law dealing with Title VII is applicable to employment discrimination claims brought under Florida law." Maniccia v. Brown, 171 F.3d 1364, 1368 n.2 (11th Cir. 1999)(citation omitted).

the butt built into them.[12] In order to prove a sexually hostile work environment, "a plaintiff must show (1) that she belongs to a protected group; (2) that she has been subjected to unwelcome sexual harassment; (3) that the harassment was based on her sex; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that a basis for holding the employer liable exists." Hulsey v. Pride Restaurants, LLC, 367 F.3d 1238, 1244 (11th Cir. 2004)(citations omitted). Defendant argues that (1) Plaintiff cannot show that the harassment was sexual in nature or based on her sex, and (2) the alleged harassment was not sufficiently severe or pervasive.

### a. Harassment Based on Plaintiff's Sex or Sexual in Nature

Defendant contends that Plaintiff cannot show that the harassment was sexual in nature or based on her sex. To the extent that Plaintiff argues that she was subject to a sexually hostile work environment due to the following incidents, the Court agrees with Defendant that these incidents were not based on Plaintiff's sex, nor were they sexual in nature: (1) Grant poking her in her side, (2) co-workers inviting her to go out drinking after work[13], (3) Bruner bringing a magazine to work that sold ladies' underwear with built-in padding, (4) Guzman asking her if

---

[12]Additionally, Plaintiff states in her deposition that the following incidents also created a hostile work environment, but these incidents were not addressed by Defendant: (1) Brodie and Guzman being on Plaintiff's street, and (2) unknown people letting air out of Plaintiff's tires. The Court notes, however, that these incidents are clearly not actionable. Brodie and Guzman being on Plaintiff's street is not sexual in nature. Likewise, people letting air out of Plaintiff's tires is not sexual in nature, and the acts could have been done by anyone, including customers of the Track.

[13]Inviting someone to be part of a group going out to a bar is not evidence of sexual harassment. See Gupta v. Florida Board of Regents, 212 F.3d 571, 584 (11th Cir. 2000).

she wanted a woman to do things for her like Brodie did for him (after Brodie brought Guzman a cup of soup), and (5) Guzman brushing her shoulder once as he walked past her.

### b.  Severe and Pervasive

Defendant also contends that the alleged harassment was not sufficiently severe or pervasive.  The "severe or pervasive" element has both a subjective and objective component: "'[t]he employee must 'subjectively perceive' the harassment as sufficiently severe and pervasive to alter the terms or conditions of employment, and this subjective perception must be objectively reasonable."  Mendoza v. Borden, Inc., 195 F.3d 1238, 1246 (11th Cir. 1999)(citation omitted).  While in the instant case, Plaintiff subjectively perceived the alleged harassment to be sufficiently severe and pervasive, the Court must determine whether her perception was objectively reasonable.  With regards to the objective component, courts consider four factors: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." Id. (citations omitted).  "[C]ourts should examine the conduct in context, not as isolated acts, and determine under the totality of the circumstances whether the harassing conduct is sufficiently severe or pervasive to alter the terms or conditions of the plaintiff's employment and create a hostile or abusive working environment." Id. (citations omitted).

With regards to the remaining incidents that Plaintiff complains of, namely: (1) people touching her butt, (2) Guzman telling her the story about a man's genitalia that he saw in the restroom, and (3) Diaz asking her if she wore underwear with the butt built into them, the Court finds that Guzman and Diaz's comments are not actionable.  Guzman and Diaz's comments were

isolated incidents, and "[g]enerally speaking, 'isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.'"[14] Walton v. Johnson & Johnson Svcs., Inc., 347 F.3d 1272, 1285 n.2 (11th Cir. 2003)(quoting Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998)). Furthermore, Title VII is not a "'general civility code.'" Gupta, 212 F.3d at 583 (quoting Faragher, 524 U.S. at 788).

However, with regards to Plaintiff's allegations that people kept touching her butt, the Court finds that such conduct, if true, is sufficiently severe and pervasive, since Plaintiff contends that Capitano touched her butt approximately twice a week for several months.[15] The Court finds that given the frequency of the conduct and the fact that it was unwanted *physical* conduct, there is a genuine issue of material fact as to whether Plaintiff was subjected to a sexually hostile work environment due to people touching her butt.

Additionally, the Court notes that Defendant argues that the area where Plaintiff worked was narrow and that it was not uncommon for people to accidentally bump into each other. While it may be determined at trial that people did in fact accidently bump into Plaintiff's butt, the Court must construe the facts in the light most favorable to Plaintiff when considering a motion for summary judgment, and as such, the Court finds that there is a genuine issue of material fact as to whether people intentionally touched Plaintiff's butt.

---

[14]Additionally, arguably, Guzman did not tell Plaintiff the story because she is a woman, since he repeated it to Spivey, a man.

[15]The Court rejects Defendant's argument that it should be granted summary judgment on Plaintiff's hostile work environment claims based on people touching Plaintiff's butt, because Plaintiff's allegations are conclusory, and as such, the allegations cannot create a genuine issue of material fact. Plaintiff identified at least two of the people that touched her, when they touched her butt, and what she did in response.


### c. Conclusion

Based on the above, the Court grants in part and denies in part Defendant's motion for summary judgment regarding Plaintiff's hostile work environment claim. The Court denies the motion only to the extent that Plaintiff contends that she was subjected to a sexually hostile work environment due to people touching her butt. However, the Court grants summary judgment in favor of Defendant regarding all of the other alleged incidents that Plaintiff contends created a sexually hostile work environment.

### 2. Retaliation

Plaintiff also argues that she was retaliated against by co-workers and supervisors due to her complaining about the alleged harassment. In order to establish a prima facie case of retaliation, a plaintiff must show "(1) that she engaged in [a] statutorily protected activity, (2) that an adverse employment action occurred, and (3) that the adverse action was causally related to the plaintiff's protected activities." Coutu v. Martin County Board of County Commissioners, 47 F.3d 1068, 1074 (11th Cir. 1995). Defendant contends that Plaintiff cannot show that she satisfies any of these elements. The Court disagrees.

The Court finds that Plaintiff's complaints about the butt touching, Guzman's story about a man's genitalia, and Diaz's comment about whether Plaintiff wore padded underwear were statutorily protected activity, the last of which occurred on November 9, 2002, when Plaintiff spoke with Larry Hall. Furthermore, Plaintiff was terminated on May 19, 2003, which is an adverse employment action. Finally, the Court finds that based on Robert Meissner's deposition testimony, there is a genuine issue of material fact as to whether Plaintiff's termination and her complaints of harassment were related.

Meissner was a supervisor at the Track. (Meissner depo[16], p. 3). Plaintiff complained to him that people were touching her butt. (Meissner depo, p. 4-6). Meissner reported this to Larry Hall, who said not to worry about it because Defendant was looking to fire Plaintiff. (Meissner depo, p. 6, 10-11). When asked at his deposition what reasons Hall gave for wanting to fire Plaintiff, Meissner states: "They did not give me a reason. They said she complains a lot and they were looking to fire her . . .." (Meissner depo, p. 17).

The Court notes that Defendant asserts a legitimate, non-discriminatory reason for terminating Plaintiff –failing to comply with Defendant's rules regarding customer courtesy. However, Plaintiff has brought forth evidence (in the form of Meissner's deposition testimony) that creates a genuine issue of material fact as to whether Defendant's purported reason is pretextual.[17] Accordingly, the Court denies Defendant's motion for summary judgment on Plaintiff's retaliation claim based on her termination.

However, to the extent that Plaintiff argues that Brodie retaliated against her by punching her in the shoulder after Plaintiff complained about her boyfriend, Guzman, the Court finds that Brodie's conduct cannot give rise to a retaliation claim. Brodie was Plaintiff's co-worker, and Brodie did not cause Plaintiff to suffer an adverse employment action by punching her in the shoulder.

---

[16] Meissner's deposition is attached to Doc. No. 67.

[17] Additionally, the Court notes that Plaintiff argues that she was terminated due to her outbursts to co-workers, which occurred whenever they would touch her in a manner that she deemed inappropriate. (Doc. No. 76, p.13). Furthermore, it appears that Plaintiff may be questioning the legitimacy of the complaints logged in the supervisor's log, since it appears that Plaintiff is arguing that not all of the complaints that occurred at the Track were logged. (Doc. No. 76, p. 15-16, 20).

Defendant cites other incidents by co-workers that Plaintiff may be suggesting constitutes retaliation. However, Plaintiff's co-workers could not cause Plaintiff to suffer an adverse employment action, and as such, the Court grants Defendant summary judgment on Plaintiff's retaliation claims to the extent that they are based on conduct by co-workers.

### III.  Conclusion

Accordingly, it is ORDERED AND ADJUDGED that:

(1) Defendant's Motion for Summary Judgment (Doc. No. 63) is **GRANTED IN PART AND DENIED IN PART**.  The motion is denied to the extent that Plaintiff's hostile work environment claims are based on people touching her butt and to the extent that Plaintiff's retaliation claims are based on her termination; otherwise, the motion is granted.

(2) Plaintiff's motion to disregard Defendant's affidavits filed in support of its motion for summary judgment (Doc. No. 66) is **GRANTED IN PART AND DENIED IN PART.**

**DONE AND ORDERED** at Tampa, Florida, this 25th day of July, 2005.

SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record
Pro Se Plaintiff