UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GERALDINE DAR DAR,

      Plaintiff,

v.                                   Case No.  8:04-cv-1055-T-24 TBM

ASSOCIATED OUTDOOR CLUB, INC.,

      Defendant.

_____/

### **ORDER**

      This matter came before the Court on a non-jury trial that was held on November 21-22, 2005.  After considering all of the evidence, the pleadings filed by the parties, the arguments made by counsel and Plaintiff[1], and the legal authorities submitted to the Court, the Court makes the following findings of fact and conclusions of law.  To the extent that any of the findings of fact might constitute conclusions of law, they are adopted as such.  Conversely, to the extent that any conclusions of law constitute findings of fact, they are adopted as such.

### **I.  Findings of Fact**

      Plaintiff began working for Defendant, which operates and owns the Tampa Dog Track ("the Track"), in July of 1999 as a roving teller.  Six months later, she became a mutuel clerk. During her employment at the Track, there was not a written sexual harassment policy in effect.

      Plaintiff contends that she was subjected to a sexually hostile work environment because people kept touching her buttocks.  The evidence at trial shows that Plaintiff only takes issue

---

[1]Plaintiff proceeded pro se in this matter.

with two people that touched her buttocks: Jean Reker and Joe Capitano.[2]  Both Reker and

Capitano were also mutuel clerks.

Plaintiff contends that her co-worker, Reker, a very petite Asian woman who is

approximately seventy years old and carries an oxygen tank, touched her buttocks in March of

2002.  Plaintiff and Reker testified to conflicting versions of events, and the Court finds Reker's

version more credible.  According to Reker, Plaintiff accused Reker of touching her buttocks.

Reker had not touched Plaintiff's buttocks prior to Plaintiff's accusation, so Reker then slapped

Plaintiff's buttocks to show her what "touching" was.  Thereafter, Reker apologized to Plaintiff.

The one time that Reker slapped Plaintiff's buttocks was the only time that Reker touched

Plaintiff's buttocks.

Plaintiff also contends that her co-worker, Capitano, a fifty-eight year old man, touched

her buttocks on several occasions.  Capitano testified that he never intentionally touched Plaintiff

and that he only touched her buttocks once or twice accidentally.  Plaintiff conceded that

Capitano never slapped, grabbed, or squeezed Plaintiff's buttocks but that he touched her

buttocks when he would walk past her.  The evidence presented during the trial through the

testimony of many witnesses employed at the Track was that the walkways behind the windows

where the mutuel clerks stood were narrow, leaving little room to walk.  Therefore, Capitano's

testimony that he accidently touched Plaintiff's buttocks while walking past her is credible.

Plaintiff complained about people touching her buttocks to her supervisors (Howard

---

[2]The only other people that touched Plaintiff's buttocks were Robert Diez and Victor
Malozi.  Diez accidentally touched Plaintiff's buttocks once and apologized, and Plaintiff
accepted his apology and told him not to do it again.  Malozi accidently touched Plaintiff's
buttocks one time, but she did not notice that it had happened.

Chesser, Victor Malozi, Orland "Pete" Berkobein, and Ed Gilley).  Plaintiff felt that her

supervisors were not handling her complaints properly, and she spoke with Larry Hall (the

Mutuels Manager) on November 9, 2002.  No one touched Plaintiff improperly after she spoke

with Hall on November 9, 2002.

Plaintiff was terminated on May 19, 2003.  (Pla. Ex. No. 55).  Defendant contends that it

fired Plaintiff for being rude to customers and other employees.[3]  The Track's rules state that

mutuel clerks cannot refuse to wait on any customer that comes to their window, and if they do,

they will be fired.  (Pla. Ex. No. 53, p. 000013).  Additionally, the Track rules state that

employees must be courteous to all customers regardless of the situation, and the failure to do so

could result in termination.  (Pla. Ex. No. 53, p. 000017).

On February 8, 2003, Howard Chesser, one of Plaintiff's supervisors, reprimanded

Plaintiff for being rude to a customer.  (Pla. Ex. No. 50, p.8).  Chesser warned Plaintiff that if

there was one more complaint, she would be fired.  (Pla. Ex. No. 8).

Thereafter, on Friday, May 16, 2003 at 5:30 p.m., Willie Jackson came to Plaintiff's

window to make a bet on a race that was going to begin at 7:00 or 7:30 that night.  Since it was

Plaintiff's lunch hour and the race was not about to begin, she told Jackson to go to another teller

to make the bet.  Jackson walked away and called Plaintiff a name.  Thereafter, two other

customers came to Plaintiff's window to bet on races, and she took their bets.  When Plaintiff

returned from lunch, her supervisor, Andre Latreille, spoke with Plaintiff about her refusal to

---

[3]Mary Horton, Plaintiff's co-worker who worked beside Plaintiff at the east walk
location, testified that she complained about Plaintiff to supervisors more than once.
Specifically, she complained about Plaintiff's mood swings, which made it hard for Horton to
work with Plaintiff.

wait on Jackson, because Jackson had sought out Latreille to complain about Plaintiff to him. (Pla. Ex. No. 50, p. 14, May 19, 2003 entry[4]).

On Saturday, May 17, 2003, Chesser told Plaintiff that there was a customer complaint logged against her and that she should not come to work on Monday until he determined what would be done about the complaint.  On Monday, May 19, 2003, Chesser called Plaintiff and told her that she was fired.  Ed Gilley, the head supervisor at the Track, testified that after Plaintiff was fired on May 19, 2003, another customer, Josh Mannis, complained about Plaintiff.[5] (Pla. Ex. No. 56).

Plaintiff contends that she was not fired for being rude to customers and employees, but instead, she was fired because she complained about people touching her buttocks.  In support of her contention, Robert Meissner, a supervisor at the Track during 2001, testified that after Plaintiff complained to him about people touching her buttocks, he notified Larry Hall of Plaintiff's complaints sometime between September and December of 2001.  Meissner testified

---

[4]The Supervisors Log, which was created in 2003, is a log of incidents that occurred at the Track, although not all incidents are logged into the Supervisors Log.  Page 14 of the Supervisors Log was altered sometime after June 1, 2005 when Gilley crossed out Josh Mannis' name from the May 24, 2003 entry and inserted the name Willie Jackson.  (Pla. Ex. No. 50, p. 14; Pla. Ex. No. 56).  Gilley testified that he erroneously crossed out Josh Mannis' name from the May 24, 2003 entry, when in fact, it was Josh Mannis that complained about Plaintiff on that date.  The Court notes that Chesser gave conflicting testimony regarding whether the May 24, 2003 entry refers to Mannis or Jackson, but given Plaintiff's testimony regarding the events that occurred on May 16, 2003 with Willie Jackson, the Court finds that the May 19, 2003 entry is based on Jackson's complaint and the May 24, 2003 entry is based on Mannis' complaint.

[5]Additionally, Chesser testified that prior to the creation of the Supervisors Log, there were many customer complaints about Plaintiff.  Specifically, customers complained that Plaintiff was rude and that she would wait on whoever she wanted.  Mary Horton, one of Plaintiff's co-workers and a mutuel clerk, also testified that Plaintiff was nice to the tipping customers and would act differently towards the non-tipping customers.  Additionally, Horton testified that Plaintiff would pick and choose who she would wait on.

4

that Hall responded that Plaintiff always complains and they were looking to fire her.

## II.  Conclusions of Law

The only claims that have survived summary judgment are (1) Plaintiff's hostile work environment claim based on Reker and Capitano touching her buttocks in violation of Title VII and the Florida Civil Rights Act ("FCRA"), and (2) Plaintiff's retaliation claim in violation of Title VII and the FCRA.[6]  After a non-jury trial, the Court finds that judgment should be entered in favor of Defendant on both claims.

### A.  Hostile Work Environment

In order to succeed on her hostile work environment claim, Plaintiff must prove by a preponderance of the evidence that she was subjected to a sexually hostile working environment. A work environment is hostile or abusive because of sexual harassment only if (1) Plaintiff was subjected to sexually offensive acts or statements; (2) such acts or statements were unwelcome and had not been invited or solicited, directly or indirectly, by Plaintiff's own acts or statements; (3) such acts or statements resulted in a work environment that was so permeated with discriminatory intimidation, ridicule or insult of sufficient severity or pervasiveness that it materially altered the conditions of Plaintiff's employment; (4) a reasonable person, as distinguished from someone who is unduly sensitive, would have found the workplace to be hostile or abusive; and (5) Plaintiff personally believed the workplace environment to be hostile

---

[6]"Florida's Civil Rights Act is patterned after Title VII, and thus federal case law dealing with Title VII is applicable to employment discrimination claims brought under Florida law." Maniccia v. Brown, 171 F.3d 1364, 1368 n.2 (11th Cir. 1999)(citation omitted).

or abusive.[7]

The Court finds that Plaintiff has not proven by a preponderance of the evidence that the alleged sexual harassment resulted in a hostile work environment.  The Court finds that Reker's alleged improper touching was not sexual in nature, and as such, it cannot support a hostile work environment claim.

Furthermore, the Court finds that Plaintiff has not shown by a preponderance of the evidence that Capitano's conduct was so severe or pervasive that it materially altered the conditions of Plaintiff's employment.  The Court notes that in determining whether a workplace environment is "hostile" or "abusive," the Court must look at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating; and whether it unreasonably interfered with Plaintiff's work performance.[8] Additionally, the Court notes that only extreme conduct amounting to a material change in the terms and conditions of Plaintiff's employment is actionable.[9]

In this case, however, the Court finds that Capitano's alleged conduct was not physically threatening, nor did Plaintiff show by a preponderance of the evidence that it was frequent. Instead, the Court finds that Capitano's conduct merely consisted of accidentally touching Plaintiff's buttocks when he walked past her in a narrow walkway, and his conduct was not of such an extreme nature as to amount to a material change in the terms and conditions of

---

[7]Pattern Jury Instruction 1.2.2, Eleventh Circuit Pattern Jury Instructions (Civil), 2000 edition.

[8]Pattern Jury Instruction 1.2.2, Eleventh Circuit Pattern Jury Instructions (Civil), 2000 edition.

[9]Pattern Jury Instruction 1.2.2, Eleventh Circuit Pattern Jury Instructions (Civil), 2000 edition.

6

Plaintiff's employment.

Furthermore, the Court finds that a reasonable person would not have found the workplace to be hostile or abusive.  While the Court acknowledges that Plaintiff subjectively perceived the workplace to be hostile or abusive, the Court finds that objectively, the workplace was not hostile or abusive.

Accordingly, for the reasons stated above, the Court finds that Plaintiff has failed to prove by a preponderance of the evidence that she was subjected to a sexually hostile work environment.  As such, judgment will be entered for Defendant on Plaintiff's hostile work environment claims.

**B.  Retaliation**

In order to establish a claim of  retaliation, Plaintiff must prove by a preponderance of the evidence "(1) that she engaged in [a] statutorily protected activity, (2) that an adverse employment action occurred, and (3) that the adverse action was causally related to [her] protected activities."  Coutu v. Martin County Board of County Commissioners, 47 F.3d 1068, 1074  (11th Cir. 1995).  The Court finds that Plaintiff engaged in statutorily protected activity when she complained about conduct that she believed constituted sexual harassment, with the last complaint occurring on November 9, 2002.  Additionally, the Court finds that Plaintiff's termination on May 19, 2003 was an adverse employment action.  Plaintiff, however, has failed to prove by a preponderance of the evidence that her termination was causally related to her complaints about the alleged sexual harassment.

For an adverse employment action to be "causally related" to a statutorily protected activity, Plaintiff must show that, but for the protected activity, the adverse employment action

would not have occurred.[10]  Stated another way, Plaintiff must show that her complaints about the alleged sexual harassment were a substantial, motivating cause that made a difference in Defendant's decision to fire her.[11]  Plaintiff has not met her burden.

Plaintiff's last complaint of sexual harassment occurred more than six months prior to her termination.  The Court finds that the length of time between her complaints and her termination weigh against a finding that there is a causal connection between the two.  See Balletti v. Sun-Sentinel Co., 909 F. Supp. 1539, 1549 (S.D. Fla. 1995)(stating that the employee's discharge, which occurred six months after her complaint of sexual harassment, was not temporally close enough to support an inference of a causal connection).

While Plaintiff contends that the causal connection can be shown by Meissner's testimony that Hall stated that Plaintiff complained too much and they were looking to fire her, the Court notes that Meissner testified that this discussion with Hall occurred between September and December of 2001–approximately a year-and-a-half prior to Plaintiff's termination.  Furthermore, the Court notes that Plaintiff was fired right after Willie Jackson complained about her, which supports Defendant's contention that it fired Plaintiff for being rude to customers.  As such, the Court finds that Defendant's purported reason for firing Plaintiff–that she was rude to customers and other employees–was credible.  Furthermore, the Court finds that Plaintiff has failed to prove by a preponderance of the evidence that her complaints about the alleged sexual harassment were a substantial, motivating cause that made a

---

[10]Pattern Jury Instruction 1.9.3, Eleventh Circuit Pattern Jury Instructions (Civil), 2000 edition.

[11]Pattern Jury Instruction 1.9.3, Eleventh Circuit Pattern Jury Instructions (Civil), 2000 edition.

difference in Defendant's decision to fire her.

Plaintiff attempted to show that other employees were not terminated for being rude to customers, and as such, Defendant's purported reason for firing her must be pretextual.  The Court, however, rejects this argument, because the other employees were not similarly situated. Furthermore, the Court notes that even if it disagreed with Defendant's decision to fire Plaintiff, such cannot support a retaliation claim, since "[f]ederal courts 'do not sit as a super-personnel department that reexamines an entity's business decisions.'"  Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991)(quoting Mechnig v. Sears, Roebuck & Co., 864 F.2d 1359, 1365 (7th Cir. 1988)).

Accordingly, for the reasons stated above, the Court finds that Plaintiff has failed to prove by a preponderance of the evidence that Defendant retaliated against her for complaining about the alleged sexual harassment.  As such, judgment will be entered for Defendant on Plaintiff's retaliation claims.

## III.  Conclusion

Accordingly, it is ORDERED AND ADJUDGED that the Clerk is directed to enter judgment in favor of Defendant on all of Plaintiff's claims and to close this case.

**DONE AND ORDERED** at Tampa, Florida, this 23rd day of November, 2005.

SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record
Pro Se Plaintiff